Matter of the Final Judicial Settlement of the Estate
of WILLIAM J. WALLACE, Deceased.

(Surrogate's Court, Madison County, February, 1919.)

Wills — trusts — principal of trust fund reduced by transfer taxes
charged against it — when trustee entitled to net income produced
by trust fund from date of death of testator.

> Where a codicil provides that all inheritance taxes assessed
> against legacies to an adopted daughter shall be paid ratably
> by the other legatees and devisees; a bequest of $20,000 to the
> " Bishop of the Diocese of the City of Albany " in trust dur-
> ing his life to invest and to apply the income to the assistance
> of such poor residents of Albany as he may deem worthy of
> charitable aid, the principal at his death to be paid over to two
> charitable corporations, the principal of the trust fund and
> the amount to be paid over at the termination of the trust
> must be reduced by the amount of the transfer taxes charged
> against it.

> The bishop is entitled to receive as trustee the net income upon
> the principal of the trust fund less the amount of transfer
> taxes charged against it from the date of the death of the
> testator, in lieu of interest, and such net income should not be
> considered as any part of the principal of the trust fund but
> should be used and applied by the trustee for the benefit of
> such poor residents of said city whom he might deem worthy
> of charitable aid.

PROCEEDING upon the final judicial settlement of the
account of executors.

Alphonzo E. Fitch, for executors.

Russell M. Johnston, for Bishop Nelson.

SENN, S.   The surrogate is asked to construe the fol-
lowing provision of the will of William J. Wallace:

" I give and bequeath to Right Reverend Richard

Nelson, Bishop of the Diocese of the City of Albany, Twenty thousand dollars in trust during his life, to invest the same and apply the income to the assistance of such poor persons, residents of Albany, as he may deem worthy of charitable aid. At his death I give and bequeath of the trust fund, Ten thousand dollars thereof to the Trustees of the Corning Foundation for Christian Work in the Diocese of Albany, in trust, for the Childs Hospital, and Ten thousand dollars thereof to the Mohawk and Hudson Humane Society."

The codicil to this will provides that all inheritance taxes assessed against legacies to his adopted daughter should be paid ratably by the other legatees and devisees in the will, and the amount of the tax that would thus be paid out of the bequest to Bishop Nelson is stated to be the sum of $1,632.80, which the executors must deduct from the principal of the trust legacy to Bishop Nelson. His counsel contends that this means that the remainder to be paid over, after the bishop's decease, should also be reduced by the same amount, that is, that the bishop should not be required to accumulate sufficient money from the income of the trust estate to make the principal $20,000, for the benefit of those who take this money after the termination of the trust; in other words, that the principal of the trust fund and the amount to be paid over at the termination of the trust is reduced by exactly $1,632.80. I think this is correct, and assuming the amount of the transfer tax is correctly stated, I so hold.

The counsel for Bishop Nelson further asks me to hold, under the authority of *Matter of Stanfield*, 135 N. Y. 292, that his client as trustee is entitled to the income actually produced upon this legacy from the date of the decease of testator on March 11, 1917, while Mr. A. E. Fitch, counsel for the executor, insists that the bishop is only entitled to interest from April 30,

1918, being one year after the granting of letters testamentary to the executors; that the *income* from $20,000 was not by the will given to Bishop Nelson for the poor of his diocese, but he was given $20,000 in trust to invest, etc.; that he could not demand the $20,000 from the executors until the year had expired; consequently he could not expect to invest it until then; that the legacy was the $20,000, not the income from that amount; that the bishop is charged with the responsibility of seeing that the amount is income producing after he gets it and that no duty was laid upon the executors to make it earn for the bishop until the year had expired.

After careful consideration I am convinced that the provisions of Judge Wallace's will with regard to the trust to Bishop Nelson do not materially differ from those in the *Stanfield* case. In each case there was a direction to invest the trust fund and in each case it was necessary to wait one year before payment of the income could be demanded and before it could be demanded that the trust fund be invested.

There are some differences between the two wills. For instance, in the Wallace will there is a trustee separate from the executor while in the Stanfield will the executor was made the trustee to invest, etc. In the former case the trust continues during the lifetime of the trustee, while in the latter it is during the life of the *cestui que trust*. These are not, in my opinion, material differences. There is another difference. In the *Stanfield* case the *cestui que trust* was a son of the testator, while under Judge Wallace's will the beneficiaries are to be selected by the trustee, and none of them are likely to be persons who should be considered as the natural objects of the testator's bounty. This is not a material difference unless it has a bearing upon the question of testator's intent as to the time when the

Surrogate's Court, Madison County, February, 1919. [Vol. 106.

income should begin. But as the language of the will is quite plain and free from ambiguity, I do not see that there is any question of intent involved.

" The rule that general legacies shall not bear interest until the expiration of one year from the grant of letters testamentary, or of administration, has no application to such a case. It is, by its terms, limited to general legacies payable out of the corpus of the decedent's estate. In the present case the bequest is not of a part of the principal of the estate, or of any property possessed by the testator in his lifetime; but of that which is to arise or accrue after his death from a specified fund to be set apart for that purpose. It is the income which constitutes the respondent's legacy. He is not seeking to charge the estate with interest upon his legacy, but is simply endeavoring to secure the legacy itself and his effort, therefore, involves no infringement of the rule regulating the payment of interest upon general legacies. * * * The direction to the executor, with respect to the investment of the fund, has reference to the administration of the trust, and cannot be available to defeat the legatee's title to income accruing previously to the time when the investment is required to be made. Until it is made an equivalent in value of the property out of which the fund is to be raised must be deemed to stand in place of the investment, and whatever income arises from it meanwhile, belongs to the legatee to whom it has been expressly given. The rule * * * is not founded upon any presumed intent of the testator. * * *.

" There is no difference in principle between the gift of an annuity and the gift of income, with respect to the time when each begins to accrue, and it is conceded that an annuity is payable from the death of the testator, unless a different time is prescribed in the

will. * * * If the estate is sufficient for the liquidation of debts and other charges, and is so invested as to be productive of income from the death of the testator, a bequest of income to a legatee for life must be construed to invest him with a title to such income from the date of the testator's demise, unless there is some provision in the will from which a contrary intent is to be inferred." *Matter of Stanfield,* 135 N. Y. 297.

" The statutory time of payment of the income to the legatee is not affected by this construction. He must still wait * * * until the expiration of one year from the grant of letters before payment of the income can be demanded, but he is then entitled to his share of the net income which has previously accrued." Id.

Commenting on *Cooke* v. *Meeker,* 36 N. Y. 15, where it was thought by some that the decision was based on the ground that the legacy was for support, the court in *Matter of Stanfield, supra,* points out that such was not the case, saying "We do not so read the opinion."

I therefore feel that I must hold that the net income upon $18,368.20 from the date of Judge Wallace's decease, or of so much of said sum as was income producing over and above the amount of the estate that was necessary for the payment of debts and other charges, must be paid to Bishop Nelson as trustee in lieu of interest upon the legacy, and the amount of income so paid shall not be considered or be any part of the principal of the trust fund, but shall be used and applied by the trustee in the same manner as the income henceforth to accrue, for the benefit of the poor persons, residents of Albany, whom the trustee may deem worthy of charitable aid.

Decreed accordingly.